NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————————
                                                    :
John R. HICKERSON,                                  :
                                                    :
        Plaintiff,                                  :        Civil No. 08-1033 (AET)
                                                    :
              v.                                    :        **MEMORANDUM & ORDER**
                                                    :
State of NEW JERSEY, et. al.                        :
                                                    :
        Defendants.                                 :
                                                    :
———————————————————————

THOMPSON, United States District Judge

        This matter is before the Court upon Defendant State of New Jersey Department of

Environmental Protection Division of Fish and Wildlife's[1] Motion for Summary Judgment [108]

and Plaintiff John R. Hickerson's Motion for Summary Judgment [109] pursuant to Fed. R. Civ.

P. 56.  The Court has decided these Motions based upon the submissions of both parties.  For the

reasons set forth below, Plaintiff's motion is granted as to the issue of the applicability of the

New Jersey Tort Claims Act (NJTCA) and is otherwise denied.  Defendant's motion is granted as

to the procedural due process claim, the takings claims, the common law nuisance claim, the

facial validity of N.J. Admin. Code §§ 7:25-5.16, 7:25-5.23, and 7:25-5.24, and is denied as to

the NJTCA issue.

---

        [1]The Court will consider there to be only one Defendant as the New Jersey Attorney
General's office has moved on behalf of what appears to be one entity.  Plaintiff's Amended
Complaint names the State of New Jersey, Department of Environmental Protection, and
Division of Fish and Wildlife as three separate defendants.

I.      **Background**[2]

Plaintiff leases land in New Jersey on which he operates a commercial organic orchard. Plaintiff was previously certified to produce organic watercress and fruit from the orchard. Plaintiff's property also includes a variety of investment projects including an orchard access road, irrigation system, and a raptor habitat.

Plaintiff's property is adjacent to publically owned property which is managed by Defendant as a Wildlife Management Area.  Wildlife Management Areas are intended to "preserve[] a diversity of fish and wildlife habitats" and "provide countless outdoor recreational opportunities."  The Wildlife Management Area System, New Jersey Division of Fish and Wildlife, http://www.state.nj.us/dep/fgw/wmas.htm#maps (last visited Oct. 2, 2009).

New Jersey State law governs where and when persons may engage in hunting activities and gives the Division of Fish and Wildlife ("Division") the authority to issue hunting licenses. Properly licensed hunters may hunt in Wildlife Management Areas.  See id.  The New Jersey Fish and Game Council ("Council") is authorized under N.J. Stat. Ann. § 13:1B-30 to determine under what circumstances and what means game may be hunted, and is empowered to enact regulations to that effect.  Under N.J. Admin. Code. § 7:25-5:23, the Council has authorized the use of lead shot for some hunting activities and wildlife management.

Plaintiff alleges that his property interests in the organic orchard have been damaged or are in imminent danger of being damaged by the deposition of lead shot from firearms discharged on his property and on the adjacent property.  (Compl., "Cause of Action" [47])  Plaintiff

_____

[2]Facts in this section were drawn from Plaintiff's Amended Complaint [47], Plaintiff's More More Definite Statement [74], Plaintiff's and Defendant's Motion for Summary Judgment [108, 109] and the documents attached thereto.

contends that state laws and hunting and wildlife control regulations promulgated by Defendant are responsible for the injury on his property.  (Compl., "Cause of Action" [47]) Specifically, Plaintiff alleges that the deposition of lead onto his property makes it impossible for him to meet federal standards for organic production and allowable poisons in foods.  (More Definite Statement 2 [74])

According to the Organic Food Production Act (OFPA), products containing lead at levels "greater than unavoidable residual environmental contamination" may not be labeled or sold as organic products.  7 U.S.C. § 6511.  In addition, certified organic farms may not use "natural poisons such as . . . lead salts . . . ." 7 U.S.C. § 6508(c)(1).  The New Jersey Department of Agriculture certifies orchards as organic under the standards set by OFPA and the National Organic Program (NOP).  Organic Certification Program, State of New Jersey Department of Agriculture, http://www.nj.gov/agriculture/divisions/md/prog/jerseyorganic.html (last visited Oct. 6, 2009).  The United States Food and Drug Administration ("FDA") determines "action levels" for poisonous or deleterious substances, above which a product may be recalled.  If there is no established action level, the FDA may recall the product at the minimum detectable level.  Guidance for Industry, U.S. Food and Drug Administration, http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/ChemicalContaminantsandPesticides/ucm077969.htm#lead (last visited Oct. 6, 2009).  There is no action level determined for lead in food, although lead action levels are set for ceramicware and hollowware.  Id.

### C.    Initial Claim and Motions for Summary Judgment

On February 26, 2008, Plaintiff, acting *pro se*, filed this action against Defendant.  At the

request of this Court, Plaintiff submitted a More Definite Statement [74] of his claims on February 5, 2009.

Because Plaintiff is acting *pro se*, this Court construes the Amended Complaint [47] and More Definite Statement [74] liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). This Court construes Plaintiff's Amended Complaint [47] and More Definite Statement [74] to be asserting seven claims: (1) substantive due process claim under the Fourteenth Amendment for violation of Plaintiff's liberty right to be employed as an organic farmer, (3) procedural due process claim under the Fourteenth Amendment for deprivation of Plaintiff's property rights, (3) physical takings claim under the Fifth Amendment, (4) regulatory takings claim under the Fifth Amendment, (5) common law nuisance claim, (6) challenge to the validity of the state regulations causing the alleged injury to Plaintiff's property under state law and the United States Constitution ("Constitution"), and (7) challenge to the constitutionality of the New Jersey Tort Claims Act ("NJTCA") as applied to obtain sovereign immunity in Constitutional civil actions under Article VI of the Constitution.

On August 28, 2009, both Plaintiff and Defendant submitted a Motion for Summary Judgment [108, 109]. Plaintiff contends that the laws and regulations enacted by Defendant are so vague that they authorize third party invasions onto his land thereby resulting in harm to his liberty and property interests. Plaintiff also argues that there is no question as to the harm caused by the alleged lead contamination and that Defendants have admitted as much. Defendants deny having made any such admissions.[3] In addition, Defendant responds that all necessary due

---

[3]In several instances, Plaintiff assumes that Defendant has admitted elements of Plaintiff's allegations when Defendant left Plaintiff "to his proofs" in its Response to Plaintiff's More Definite Statement [82]. (Pl.'s Mot. Summ. J. 10 [109]) This Court does not feel that this

process was provided, that its statutes and regulations are not unconstitutionally vague, that Plaintiff has made no evidentiary showing of a causal connection between the alleged injury to Plaintiff's property and Defendant's actions, that the takings claims are not ripe, that this court lacks jurisdiction over the common law nuisance claim, and that its administrative regulations and the NJTCA are unquestionably valid under state law and the United States Constitution.

## II.    Analysis

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56©; Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).  To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322.

### A.    Substantive Due Process Claim

Plaintiff claims that Defendant has deprived him of his fundamental right to be an organic

_____

is sufficient to constitute an admission of elements where Plaintiff would bear the burden of proof at trial.

farmer.  Plaintiff contends that Defendant's undisputed role in the regulation of lead use, combined with evidence of elevated lead levels and lead shot on his property, along with the denial of his organic certification establishes this claim as a matter of law.  (Pl.'s Mot. Summ. J. 25-26, 27-28, 31-32 [109])  Defendant denies that this fundamental right exists.[4]  (Opp'n Pl.'s Mot. Summ. J. 4 [113])

   "The liberty to pursue a calling or occupation ... is secured by the Fourteenth Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994).  The liberty interest at issue is "not the right to a specific job." Id.  "[T]he Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but [it is] a right which is nevertheless subject to reasonable government regulation.  Conn v. Gabbert, 526 U.S. 286, 291-92 (1999).  Under this legal standard, to survive summary judgment Plaintiff must provide some evidence that Defendant has prohibited him from all work as an organic farmer or that the challenged regulations are not rationally related to a legitimate state interest.  See Latessa v. New Jersey Racing Com'n 113 F.3d 1313, 1318 (3d Cir. 1997) (requiring a showing by plaintiff that he had been "effectively banned from all work in his occupation"); United States v. Williams, 124 F.3d 411, 422-23 ("laws restricting access to specific types of private employment are subject to only rational basis review").

   Plaintiff has not alleged that the State of New Jersey has banned him from being an organic farmer, or that he could not be an organic farmer at a different location.  In addition,

_____

   [4]The Court notes that although Defendant denies the existence of this right, Defendant did not request summary judgment on Plaintiff's substantive due process claim in its Motion for Summary Judgment [108].

Plaintiff's evidence does not show that Defendant does not have a legitimate interest in allowing the continued use of lead shot or in allowing hunting activities on its property. Thus, genuine questions of material fact are present, and Plaintiff's request for summary judgment on this claim is denied.

### B.      Procedural Due Process Claim

Plaintiff claims that Defendant deprived him of his right to exclude strangers and to use, enjoy, and profit from his property. (More Definite Statement 2, 7 [74]) For there to be a procedural due process violation, Plaintiff must show that the state deprived him of a protected property right and that the deprivation occurred without due process. Burns v. Pa. Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008).

Plaintiff argues that several state laws and regulations either authorize or are so vague that they encourage physical invasions of his property by third parties. (More Definite Statement 7-8 [74]) Plaintiff also contends that Defendant's decision to use the adjacent property adjacent for hunting has caused injury to his property. (More Definite Statement 2-3 [74]) Plaintiff alleges that he was denied due process because the rule making procedure of the Council is constitutionally inadequate and because the state laws and regulations are void for vagueness. (More Definite Statement 11, 5 [74]) Defendant responds that its statutes and regulations are not vague, do not authorize third-party intrusion onto private property, and that Plaintiff has made no evidentiary showing of a causal connection between the alleged injury to Plaintiff's property and Defendant's actions. Lastly, Defendant argues that due process was provided to Plaintiff by the Council's notice and comment procedures.

### 1.     Deprivation of Property Rights

#### a.     Authorization of Third Party Invasions

Plaintiff claims that N.J. Stat. Ann. §§ 23:3-29, 23:7-1, 23:7-3, 23:7-6, and 23:7-7 as well as N.J. Admin. Code. §§ 7:25-5.16, 7:25-5.23 and 7:25-5.24 encourage or authorize invasions of third parties onto his land.  N.J. Stat. Ann. § 23:3-29 requires persons who are in the business of raising and selling game birds or game animals, in either a wholly enclosed area or in a semi-wild state, to apply to the Division for a license.  N.J. Stat. Ann. § 23:7-1 imposes civil penalties on any person "who trespasses on the lands of another for the purpose of hunting, fishing, trapping, or taking wildlife . . . after notice . . . has been conspicuously posted by the owner, occupant, or lessee . . . or after having been forbidden so to trespass by the owner, occupant, or lessee." Likewise, N.J. Stat. Ann. § 23:7-3 imposes civil penalties for "[a] person who, while hunting, fishing, trapping, or taking wildlife, causes or assists in causing damage or injury to real or personal property of another . . . ."  N.J. Stat. Ann. § 23:7-6 makes it unlawful for a person to put up signs "forbidding hunting, fishing or trapping on any property in this state unless he be the owner or lessee of such property."  Finally, under N.J. Stat. Ann. § 23:7-7, a posted sign must include the name or signature of the owner or lessee to constitute legal notice.

Plaintiff contends that these laws work in conjunction to make it legal to hunt on private property lacking proper notice and thereby encourage hunting with lead shot on all private property.[5]  (Pl.'s Mot. Summ. J. 34-35 [109])  This Court disagrees.  While State law only sets

---

[5]Plaintiff also alleges that he has been told that it is legal to hunt on private property without posted notices, but does not state who gave him such information.  (Pl.'s Mot. Summ. J. 36 [109]) To support this contention, Plaintiff cites to N.J. Stat. Ann. § 23:2-2, which states only that the Division may "permit persons, when duly authorized by the board, to carry firearms in

out penalties for trespass on land where notice was posted, it does not authorize or encourage trespass onto unposted private property.  Third party entry without consent would still be actionable as trespass under New Jersey common law.  See Rinaldo v. RNR Inv., LLC, 387 N.J. Super. 387, 394 (App. Div. 2006) (recognizing trespass as valid civil tort claim).

Plaintiff also argues that N.J. Admin. Code §§ 7:25-5.16, 7:25-5.23, and 7:25-5.24 authorize third party invasions onto his property.  N.J. Admin. Code § 7:25-5.16 governs the permitting, taking and "use of raptors for falconry, to take, kill, or pursue wild birds or wild animals."  N.J. Admin. Code § 7:25-5.23 governs the use of firearms and missiles for hunting. This section authorizes the use of lead bullets for the hunting of several types of game animals. N.J. Admin. Code § 7:25-5.24 details under what conditions a person can hunt with a bow and arrow, focusing on the seasons in which use of a bow and arrow is permitted and the physical requirements for the bow and arrows.

These regulations do not authorize third party entry onto private lands.  In fact, §§ 7:25-5.16 and 7:25-5.23 explicitly state that individuals are still subject to the provisions of N.J. Stat. Ann. § 23:1-1 et seq., which includes penalties for trespassing on notice or causing damage to real property of another.  Plaintiff argues that language in § 7:25-5.23(s), authorizing personnel and agents of Defendant to carry firearms for scientific or public safety purposes "irrespective to . . . other restrictions in any statute or rule" exempts Defendant and its agents from the trespassing sanctions.  (Pl.'s Mot. Summ. J. 39 [109])  This, however, is a misreading of the regulation.  In full, it states: "This section applies to all non-domestic animals whether native or exotic,

the woods and fields at any time when necessary for the conservation of wild life."

irrespective to season status, or other restrictions in any statute or rule."  The subchapter is intended to eliminate any restrictions related to type of animal being studied or taken, not to property rights.  Thus, this Court concludes that when read in conjunction with N.J. Stat. Ann. §§ 23:7-1 and 23:7-3, these sections of the code do not authorize or encourage trespass.  Defendants cannot be blamed for the unauthorized actions of third parties.  The Due Process Clause does not require the State to protect the property of its citizens against invasion by private actors. DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189, 195 (1989).

<u>b.</u>      <u>Causation of Harm to Plaintiff's Property</u>

Plaintiff offers several arguments and pieces of evidence to support his claim that his property rights have been injured by Defendant.  First, Plaintiff argues that Defendant's management of the adjacent property violates the NOP standards which require an organic farm to have "distinct, defined boundaries and buffer zones" which "prevent the possibility of unintended contact by prohibited substances applied to adjacent land areas."  7 C.F.R § 205.2; 7 C.F.R § 205.202.  However, the most recent organic certification report by the New Jersey Department of Agriculture found Plaintiff's buffer zones to be adequate.  (Collier Cert, Ex. A, 3 [108-9])

Second, Plaintiff has provided pictures of trees embedded with lead shot and lab results which show elevated levels of lead on his property.  (Pl.'s Mot. Summ. J., App. PA-28; Pl.'s Mot. Summ. J., App. PA-29)  Since the Court has already determined that Defendant has not authorized entry onto Plaintiff's property, any embedded shot must be the result of trespass and cannot be directly attributed to Defendant.  Plaintiff has no evidence of agents of the State

entering or harming his property.  (Hickerson Dep. 39:8-39:19 [108-4]).

Third, Plaintiff contends that Defendant's admission that lead shot may be ingested by migratory birds, lead testing on his property, and academic studies which show elevated levels of lead in lands surrounding shooting ranges prove that Defendant's use of the adjacent property has or could imminently cause damage to his property.  (Herrighty Cert. 4 [12-2]; Pl.'s Mot. Summ. J., App. PA-28 [109-31]; Opp. Def.'s Mot. Summ. J., PSA-38, PSA-40, PSA-43 [110-10, 110-12, 110-15])  Plaintiff argues that two lead analyzes which show higher lead levels in the water on his property which is closer to the wildlife management area, prove that Defendant's practices caused the contamination on his property.  However, the tests were run more than six years apart by different labs, making any conclusion on causation almost impossible to draw.  (Def.'s Mot. Summ. J., Ex. 1, App. 2, 38 [108-6])  All of the academic studies looked at the impact of concentrated deposition of lead at shooting ranges rather than the more dispersed impact that would occur due to hunting in relative wilderness.  An expert report provided by the Defendant concludes that "it is extremely unlikely that lead shot deposition that would result from hunting or wildlife control activities on State-owned property would result in measurable plant uptake of lead," and explicitly distinguishes between shooting ranges and wildlife management areas.[6] (Stansley Expert Report 4 [109-17])

Finally, Plaintiff argues that the presence of lead has caused him to lose his organic

---

[6]Plaintiff has disputed the admissibility of the Stansley expert report on the grounds that Stansley has not previously testified at a trial and that the report was not signed by an attorney of record.  (Opp. Def.'s Mot. Summ. J. 3-4 [110])  These are not requirements of Fed. R. Civ. P. 26(a)(2).  The Court will consider the findings in the Stansley Expert Report.

certification.[7]  (Pl.'s Mot. Summ. J. 32 [109])  Plaintiff's evidence does not support his

contention.  Plaintiff previously stated that he voluntarily withdrew in 2009 from the New Jersey

Department of Agriculture organic certification process and was rejected by another organic

certification organization due to the current litigation, not lead levels. (Hickerson Dep. 54:8-54:9

[108-4]; Pl.'s Mot. Summ. J., PA-30, 3 [109-34]).  Prior to his voluntary withdrawal, Plaintiff's

organic certification had been renewed in December 2007.  (Collier Cert., Ex. A, 2 [108-9])  The

author of the certification report did not find any compliance issues.

The Court does not believe that the above evidence rises above a "mere scintilla" of proof

that Defendant has harmed or will imminently harm Plaintiff's property interests.  Anderson, 477

U.S. at 251.  Given that Plaintiff will bear the burden of proof at trial on the issues of harm and

causation, there is insufficient evidence for a reasonable jury to find that the state laws and

regulations, as applied on the adjacent property, harm Plaintiff's property rights.

### 2.      Denial of Due Process

Plaintiff has raised no genuine issue regarding the amount of due process that was

provided to him.  First, Plaintiff alleges that the Council is "entirely comprised by citizen

representatives of recreational hunting interest."  Plaintiff's statements regarding the membership

of the Council are mere allegations and are not further supported by submitted evidence.

Second, Plaintiff contends that the Council's rule-making procedure "lacks adequate

safeguards, transparency, interaction, [] review, [and] an adverse decision appeal process."  State

---

[7]Plaintiff also argues that his property rights have been injured because he may now be
subject to action from the FDA.  (Pl.'s Mot. Summ. J. 22-23 [109])  However, Plaintiff has
provided no evidence that he has actually been subject to such an action or that such an action is
imminent.

law provides that prior to the adoption of any rule, an agency shall provide at least 30 days notice

of its intended action, shall give all interested persons reasonable opportunity to submit their

arguments orally or in writing, and shall fully consider all submissions.  N.J. Stat. Ann. §

52:14B-4.  In addition, state law gives interested parties the ability to "petition an agency to

adopt a new rule, or amend or repeal any existing rule."  Id.

Defendant's notice and comment procedure is constitutionally adequate.  See Six Month

Extension of N.J. Admin. Code 5:91-1 et seq., 372 N.J. Super. 61, 69 (App. Div. 2004) (noting

that constitutional due process rights are one of the principles of administrative fairness

underlying § 52:14B-4); Cf. State v. Klemmer, 237 N.J. Super. 32, 43-45 (Law Div. 1989)

(finding secret rule which did not meet requirements of § 52:14B-4 to have violated due process).

Plaintiff has not alleged that Defendant failed to follow state procedures when it enacted the

regulations.  Plaintiff admitted that he has not made use of the available notice and comment or

petition procedures.  (Hickerson Dep. 33:7-33:23, 51:9-51:18, June 16, 2009 [108-4], Collier

Cert., Ex. C, 8 [108-11]).

Third, Plaintiff argues that these notice and comment procedures only apply to the

administrative code and do not allow him to challenge state law.  (Opp. Def.'s Mot. Summ. J. 35

[110-2]).  Procedural due process considerations are not implicated by legislative acts.  Rlogin v.

Bensalem Tp., 615 F.2d 680, 693 (1980).  When it comes to state law, Plaintiff's procedural due

process rights are protected by legislative process.

Finally, Plaintiff argues that the state laws and regulations discussed above violate due

process because they are constitutionally void for vagueness.  In order to violate due process, a

law must be so vague that "persons of ordinary intelligence must necessarily guess at its meaning

and differ to its application." <u>Am. Civil Liberties Union v. Ashcroft</u>, 322 F.3d 240, 268 (3d Cir. 2003).  The fact that a statute requires reference to other provisions does not make it unconstitutionally vague since "a reasonable person . . . would consult the incorporated provisions." <u>Interactive Media Entm't and Gaming Ass'n v. Attorney General</u>, 2009 WL 2750279, at *3 (3d Cir. Sep. 1, 2009).

As already discussed, a reasonable person would understand the relevant state regulations, when read in conjunction with state laws prohibiting trespass on posted property, to prohibit entering private property without authorization.  The fact that several sections of the administrative code do not directly forbid trespass onto private party does not make them unconstitutionally vague.

Plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact on either the issue of causation or due process.  Thus, Defendant's Motion for Summary Judgment on the procedural due process claim is granted and Plaintiff's Motion for Summary Judgment on the procedural due process claim is denied.

### C.    Fifth Amendment Takings Claim

In order to bring a takings claim under the Fifth Amendment, a plaintiff must first exhaust the state's procedure for seeking just compensation, as long as it is constitutionally adequate. <u>County Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 168 (3d Cir. 2006).  This is true for a physical taking claim as well as for facial and as-applied regulatory taking claims.  <u>See</u> <u>Id.</u> at 168; <u>Theodorou v. Measel</u>, 53 Fed. Appx. 640, 643 (3d Cir. 2002).  The Third Circuit has recognized that an inverse condemnation proceeding is a constitutionally adequate procedure for obtaining just compensation.  <u>Brubaker v. East Hempfield Tp.</u>, 234 Fed. Appx. 32, 36 (3d Cir. 2007).

-14-

Plaintiff had the ability to bring an inverse condemnation action in the Law Division of the Superior Court, as provided for by the New Jersey Eminent Domain Act of 1971. CBS Outdoor Inc. v. New Jersey Transit Corp., 2007 WL 2509633, at *16 (D.N.J. Aug. 30, 2007); N.J. Stat. Ann. §§ 20:3-1 et seq.. Plaintiff did not seek compensation prior to these proceedings. (Hickerson Dep. 52:2-52:15 [108-4]) Plaintiff's failure to utilize the available constitutionally adequate remedy means that Plaintiff's physical and regulatory takings claims are not ripe and must be dismissed.[8] Defendant's Motion for Summary Judgment as to the takings claims is granted, and Plaintiff's Motion for Summary Judgment as to the takings claims is denied.

### D.   Common Law Nuisance Claim

Plaintiff has alleged that N.J. Stat. Ann. § 23:3-29, which authorizes the creation of semi-wild and commercial shooting preserves, results in a common law nuisance on his property. Federal courts may not exercise supplemental jurisdiction over state law claims against unconsenting states. Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-41 (2002). A

---

[8] Even if Plaintiff's takings claims were ripe, they would most likely be meritless. A physical taking only occurs when there is "direct government appropriation or physical invasion of private property." Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537 (2005). Plaintiff has not alleged that Defendants have appropriated any portion of his property. In addition, as previously discussed, none of the state laws or regulations in question authorize invasion onto Plaintiff's property. Therefore, there has been no physical taking in violation of the Fifth Amendment.

A regulatory taking occurs when "regulations [] compel the property owner to suffer a physical 'invasion' of his property" or "where regulation denies all economically beneficial or productive use of land." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992). Any physical invasion that has occurred appears to have been the result of an illegal trespass or may be avoided by the proper posting of notices by the Plaintiff. Defendant's regulations are part of a "public program adjusting the benefits and burdens of economic life to promote the common good," and are therefore unlikely to found to cause a regulatory taking. State of New Jersey v. United States, 91 F.3d 463, 468 (3d Cir. 1996). Plaintiff has submitted evidence of his investments in his organic orchard, but obstruction of investment-backed expectations is only one factor in considering whether there has been a regulatory taking. See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 131 (1978).

common law nuisance claim turning on the interpretation of the New Jersey Administrative Code is a pure state claim.  Defendants have not consented to this action.  Therefore, Plaintiff's claim that N.J. Stat. Ann. § 23:3-29 results in a nuisance on his property must be dismissed for lack of jurisdiction.  Defendant's Motion for Summary Judgment as to the common law nuisance claim is granted, and Plaintiff's Motion for Summary Judgment as to the nuisance claim is denied.

**E.   Validity of N.J. Admin Code §§ 7:25-5.16, 7:25-5.23, and 7:25-5.24**

Plaintiff argues that the enactment of N.J. Admin. Code §§  7:25-5.16, 7:25-5.23, and 7:25-5.24 exceeded the authority given to the Council under N.J. Stat. Ann. §§ 13:1B-28, 13:1B-30 and the Constitution.  (More Definite Statement 9-10 [74])  N.J. Stat. Ann. § 13:1-B28 gives the Council authority to "formulate comprehensive policies for the protection and propagation of fish, birds, and game animals . . . ."  N.J. Stat. Ann. § 13:1B-30 empowers the Council to "determine under what circumstances, when and in what localities, by what means and in what amounts and numbers such fresh water fish, game birds, game animals, and fur-bearing animals, or any of them, may be pursued, taken, killed, or had in possession" and to "adopt and from time to time amend and repeal such appropriate and reasonable regulations concerning the same."

The sections of the Administrative Code challenged by Plaintiff govern the taking and use of raptors for falconry, the use of firearms and missiles for hunting activities, and the use of bows and arrows for hunting activities.  N.J. Admin. Code § 7:25-5.16; § 7:25-5.23; § 7:25-5.24.  These regulations clearly fall into the scope of N.J. Stat. Ann. § 13:1B-30 as they regulate "under what circumstances [and] . . . by what means" game animals may be "pursued, taken, killed, or had in possession."  Thus, enactment of the regulations was within the Council's statutory authority.

-16-

Plaintiff's claim that the regulations violate the Constitution appears to be a reiteration of his argument that the administrative code is manifestly vague as to whether private property may be entered for hunting purposes.  The Court has already addressed this question and found that these sections of the administrative code do not authorize third party entry onto private property and are not unconstitutionally vague.  Plaintiff has not shown that there is a genuine issue of material fact regarding the authority to enact N.J. Admin. Code §§ 7:25-5.16, 7:25-5.23, and 7:25-5.24.  Therefore, Defendant's Motion for Summary Judgment on this claim is granted and Plaintiff's Motion for Summary Judgment as to the validity of §§ 7:25-5.16, 7:25-5.23, and 7:25-5.24 is denied.

### F.      Applicability of the NJTCA

Plaintiff argues that application of the NJTCA to civil actions that arise under the Constitution is a violation of Article VI of the Constitution, while Defendant contends that the NJTCA is constitutional both on its face and as applied in this action.  The Third Circuit has held on several occasions that the NJTCA does not apply to federal or state constitutional claims. County Concrete Corp., 442 F.3d. at 174-75 (3d Cir. 2006); Mancini v. Lester, 630 F.2d 990, 994 (3d Cir. 1980) ("federal rights . . . cannot be denied by the passage of state legislation").  As a matter of law, Defendant cannot raise the NJTCA as a defense to the constitutional civil claims in this action.  Therefore Plaintiff's Motion for Summary Judgment on this issue is granted, and Defendant's Motion for Summary Judgment as to this issue is denied.[9]

---

[9]This court does not reach the question of the availability of a defense of sovereign immunity as guaranteed by the 11th Amendment.  Plaintiff's claim was limited to the applicability of the NJTCA and Defendant did not raise sovereign immunity as grounds for summary judgment on Plaintiff's claims.

## <u>CONCLUSION</u>

For the foregoing reasons, and for good cause shown,

IT IS on this 13th day of October, 2009,

ORDERED that Plaintiff's Motion for Summary Judgment [109] is GRANTED in part and DENIED in part, in accord with the Court's Opinion; and it is further

ORDERED that Defendant's Motion for Summary Judgment [108] is GRANTED in part and DENIED in part, in accord with the Court's Opinion; and it is further

ORDERED that Defendant may file an additional motion for summary judgment addressing the substantive due process claim presented by Plaintiff; and it is further

ORDERED that Plaintiff may file an opposition to Defendant's second motion for summary judgment within the time allowed by the local rules for opposition briefs.


s/ Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.